PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OHIO EDISON COMPANY, | ) | |
| | ) | CASE NO. 5:14cv321 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| FRONTIER NORTH INC., *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF Nos. 17; 18; 20] |

Pending before the Court are Defendant Frontier Communications Corporation's

("Frontier Communications") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and

12(b)(6) (ECF No. 17) and Defendant Frontier North Inc.'s ("Frontier North") Motion to Dismiss

pursuant to Fed. R. Civ. P. 12(b)(6).  ECF Nos. 18; 20.  The Court has been advised, having

reviewed the record, including the parties' briefs and the applicable law.  For the reasons

provided below, the Court grants Frontier Communication's Motion to Dismiss and denies

Frontier North's Motion to Dismiss.

**I.  Factual and Procedural Background**

This is a case about utility pole rents.  Plaintiff Ohio Edison is an Ohio corporation with

its principal place of business in Ohio.  ECF No. 1-1 ¶ 2.  Defendant Frontier North is a

Wisconsin corporation that Ohio Edison alleges has its principal place of business in Ohio.  ECF

No. 1-1 ¶ 3.  Defendant Frontier Communications is a Delaware corporation with its principal

place of business in Connecticut, and is the parent company of Frontier North.  ECF No. 1-1 ¶ 4.

(5:14cv321)

Effective January 1, 2008, Ohio Edison and Frontier North's predecessor-in-interest, Verizon North, entered into a Joint Use Agreement.[1]  The Joint Use Agreement now governs Ohio Edison and Frontier North, and provides the terms by which the parties may jointly use utility poles.  ECF No. 1-1 ¶ 9.  Specifically, the Joint Use Agreement permits Ohio Edison to attach its electric facilities to Frontier North poles and Frontier North to attach its communications facilities to Ohio Edison poles.  ECF No. 1-1 ¶ 11.  The Joint Use Agreement also sets forth the rates each party pays for the use of the other's poles.  ECF No. 1-1 ¶ 12.  For calendar year 2011, the Joint Use Agreement provided that Ohio Edison owed Frontier North $33.02 per pole that Ohio Edison used and that Frontier North owed Ohio Edison $23.74 per pole that Frontier North used.  ECF No. 1-1 ¶ 17.

Ohio Edison alleges that, for calendar year 2011, Frontier North owed Ohio Edison $140,176.12 in utility pole rent.[2]  ECF No. 1-1 ¶ 22.  Ohio Edison further alleges that it mailed an invoice to Frontier North on October 19, 2012, detailing its and Frontier North's rent obligations under the Joint Use Agreement.  ECF No. 1-1 ¶ 25.  Ohio Edison received a partial payment on its invoice on March 20, 2013.  An entity identified as "Frontier Communications Inc." made a $45,789.59 payment on the October 19, 2012 invoice that Ohio Edison sent to Frontier North.  ECF No. 1-1 ¶ 26.  Ohio Edison alleges that it has not received any other

---

[1]  Ohio Edison alleges that the Joint Use Agreement remains in full force and effect, and neither Frontier Communications nor Frontier North has disputed its binding effect.  *See*  ECF No. 1-1 ¶ 9.

[2]  This figure reflects the net amount for each party's use of the other's poles.  Ohio Edison alleges that, for 2011, Frontier North owed $1,012,036.20 for the use of Ohio Edison poles while Ohio Edison owed Frontier North $871,860.08 for the use of Frontier North's poles. ECF No. 1-1 ¶¶ 20–21.

(5:14cv321)

payments on the October 19, 2012 invoice.  ECF No. 1-1 ¶ 29.  Ohio Edison sent letters, through its service company FirstEnergy Service Company, to Frontier Communications on June 5, 2013 and October 10, 2013, notifying the parent company that Frontier North had been in default of the Joint Use Agreement for its failure to make a full payment on the October 19, 2012 invoice.  ECF No. 1-1 ¶ 31.  Ohio Edison alleges, however, that neither Frontier Communications nor Frontier North has paid the remaining balance on the October 19, 2012 invoice.  ECF No. 1-1 ¶ 32.

Ohio Edison filed a complaint against both Frontier Communications and Frontier North on January 16, 2014 in the Summit County Court of Common Pleas.  ECF No. 1-1.  Defendants removed the case to federal court on February 14, 2014.  ECF No. 1.  Thereafter, the parties sought numerous extensions of time in order to attempt to settle this and other lawsuits pending between the two sides.  ECF Nos. 5; 10; 11; 12; 13.  The Court stayed the case on May 27, 2014.  The Court reopened the case after the parties had stated they unable to reach a settlement.  ECF No. 15.  Defendants then filed the pending motions to dismiss.  Frontier Communications moved to dismiss for lack of personal jurisdiction or, alternatively, for failure to state a claim on the grounds that it is not a party to the breach of contract claim between Ohio Edison and Frontier North.  ECF No. 17.  Frontier North moved to dismiss for failure to state a claim on the grounds that Ohio Edison has failed to adhere to the Joint Use Agreement's mandatory dispute resolution provisions.  ECF Nos. 18; 20.  Ohio Edison has replied to both motions.  ECF Nos. 28; 29; 30.  Frontier Communications and Frontier North have replied.  ECF Nos. 35; 36.  The matter is ripe for adjudication.

**II.  Legal Standard**

(5:14cv321)

### A.  Personal Jurisdiction

The party resisting a Rule 12(b)(2) motion to dismiss bears the burden of demonstrating that personal jurisdiction exists.  *Air Prods. and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).  The party's burden depends on whether the court conducts an evidentiary hearing on the question of jurisdiction.  If an evidentiary hearing is held, the party carrying the burden must establish jurisdiction by a preponderance of evidence.  *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 & n.3 (6th Cir.2006).  If the court rules on the motion to dismiss without an evidentiary hearing, the party need only make a *prima facie* showing that jurisdiction exists.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  When evaluating the *prima facie* showing, the court must consider the pleadings and affidavits in the light most favorable to the non-moving party.  *Id.*  Moreover, the court "does not weigh the controverting facts of the party seeking dismissal."  *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).  The court, however, is permitted to consider the moving party's "undisputed factual assertions."  *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

### B.  Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege enough facts to "raise a right to relief above the speculative level."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  It also must "state a claim that is plausible on its face."  *Id.* at 570.  Upon reviewing a motion to dismiss, the Court shall take the pleadings as true and construe them "liberally in favor of the party opposing the motion to dismiss."  *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).  A court may dismiss a claim if the Court finds on the face of the pleading that "there is an insurmountable bar to relief indicating that the plaintiff does not have a claim."  *Ashiegbu v.*

(5:14cv321)

*Purviance*, 76 F. Supp.2d 824, 828 (S.D. Ohio 1998), *aff'd* 194 F.3d 1311 (6th Cir. 1999), *cert. denied*, 529 U.S. 1001 (2000).

Claims set forth in a complaint must be plausible, rather than conceivable. *Twombly*, 550 U.S. at 570.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. Pro. 8(a)(2)).  The factual allegations in the complaint "must contain something more . . . than . . . merely creat[ing] a suspicion of a legally cognizable right." *Twombly*, 550 U.S. at 555-56 (quoting 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, p. 235–236 (3d ed. 2004)).  In addition to reviewing the claims set forth in the complaint, a court may also consider exhibits, public records, and items appearing in the record of the case as long as the items are referenced in the complaint and are central to the claims contained therein.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.  Discussion

#### A.  Frontier Communications' Motion to Dismiss

Frontier Communications argues that two separate reasons justify granting its motion to dismiss.  First, Frontier Communications argues that the Court lacks personal jurisdiction over the company.  ECF No. 17 at 5.  Second, assuming the Court may exercise personal jurisdiction, Frontier Communications argues that Ohio Edison has failed to state a breach of contract claim against Frontier Communications.  ECF No. 17 at 7.  Because the Court agrees that Ohio Edison has failed to establish that the Court may exercise personal jurisdiction over Frontier Communications, the Court need only address Frontier Communications' first argument.

(5:14cv321)

### 1.  Principles of Personal Jurisdiction

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Int'l Techs. Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997) (citation omitted).  Under Ohio law, personal jurisdiction exists over a non-resident defendant when Ohio's long arm-statute confers jurisdiction and the exercise of jurisdiction over the non-resident defendant comports with the Federal Due Process Clause.  *Kauffman Racing Equip., L.L.C. v. Roberts*, 2010-Ohio-2551, 126 Ohio St.3d 81, 930 N.E.2d 784, 790.  Ohio's long-arm statute provides nine specific bases for the exercise of personal jurisdiction over a non-resident defendant.[3]  R.C. § 2307.382(A).  Ohio's long-arm statute further limits personal jurisdiction

---

[3]  Under R.C. § 2307.382(A), the bases for jurisdiction are:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury ... by an act or omission outside this state . . . ;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state . . . ;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons . . . ;

(7) Causing tortious injury to any person by a criminal act . . . ;

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at

(5:14cv321)

over non-resident defendants to causes of action "arising from" the basis for personal

jurisdiction.  R.C. § 2307.382(C).  The "arising from" requirement for long-arm jurisdiction has

been interpreted as requiring a "proximate cause" relationship between the plaintiff's injury and

the defendant's conduct in Ohio.  *Brunner v. Hampson*, 441 F.3d 457, 466 (6th Cir. 2006)

(concluding the Ohio long-arm statute requires the tighter fit of proximate causation and not the

"but-for" approach used under the Due Process Clause).

Before an Ohio court may exercise long-arm jurisdiction, however, the court must ensure

that the exercise of jurisdiction over the defendant comports with the requirements of the Due

Process Clause: the defendant must "have certain minimum contacts with [the forum state] such

that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice."  *Third Nat. Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)

(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation

marks omitted).  General personal jurisdiction—when the suit does not arise out of the

defendant's contacts with the forum state—may be exercised when the defendant's contacts with

the forum state are "continuous and systematic."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754

(2014).  Specific personal jurisdiction allows a state to "exercise[] personal jurisdiction over a

defendant in a suit arising out of or related to the defendant's contacts with the forum."  *Third*

*Nat. Bank in Nashville*, 882 F.2d at 1089 (quoting *Helicopteros Nacionales de Colombia, S.A. v.*

*Hall*, 466 U.S. 408, 414 n.8 (1984)).  The Sixth Circuit has set forth the following three-part test

for analyzing whether specific jurisdiction may be exercised consistent with due process:

First, the defendant must purposefully avail himself of the privilege of acting in

_____

the time of contracting.

(5:14cv321)

the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Ohio Edison advances three different arguments for the exercise of personal jurisdiction over Frontier Communications.  First, Ohio Edison argues that "Frontier Communications is subject to general jurisdiction in Ohio."  ECF No. 29 at 14.  Second, Ohio Edison argues that the Court may exercise specific jurisdiction over Frontier Communications because the breach of contract arises from Frontier Communications' contacts with Ohio.  ECF No. 29 at 14–15.  Finally, Ohio Edison argues that the alter ego theory of jurisdiction applies, and that Frontier Communications is subject to jurisdiction in Ohio based on Frontier North's contacts with the state.  ECF No. 29 at 15–16.  At the outset, the Court rejects Ohio Edison's argument that the Court may exercise general jurisdiction over Frontier Communications.  "Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute."  *Conn*, 667 F.3d at 717.  Therefore, Ohio Edison must demonstrate that the Court may either exercise specific personal jurisdiction over Frontier Communications or apply the alter ego theory of personal jurisdiction.

### 2.  Specific Jurisdiction

Ohio Edison next argues that the Court may exercise specific jurisdiction over Frontier Communications.  For the reasons discussed below, however, the Court concludes that it may not exercise specific jurisdiction over Frontier Communications because Ohio Edison has failed to

(5:14cv321)

show that Ohio's long-arm statute confers jurisdiction.

Section (A)(1) of the long-arm statute confers jurisdiction over a defendant engaged in transacting business in Ohio. R.C. § 2307.382(A)(1). The Ohio Supreme court defines "transacting any business" broadly: "The term 'transact' as utilized in the phrase '[t]ransacting any business' encompasses 'to carry on business' and 'to have dealings,' and is 'broader . . . than the word 'contract.'" *Goldstein v. Christiansen*, 1994-Ohio-229, 70 Ohio St. 3d 232, 236, 638 N.E.2d 541, 544 (quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 480 (1990)). Given the "bare wording" of the statute, courts must make a case-by-case determination of whether a non-resident defendant has transacted business in Ohio. *Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, 2011 WL 711568, at *4 (N.D. Ohio Feb. 22, 2011). "The mere existence of a contract is insufficient to support jurisdiction." *Burnshire Development LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 431 (6th Cir. 2006). Moreover, the plaintiff needs to establish that there is a substantial connection between the defendant and the forum state. *U.S. Sprint Commc'ns Co. P'ship v. Mr. K's Foods, Inc.*, 1994-Ohio-504, 68 Ohio St. 3d 181, 185, 624 N.E.2d 1048, 1052. Courts have identified two factors that guide the analysis of whether a non-resident defendant has transacted business within Ohio. As another unit of the instant Court observed:

> The first factor is whether the out-of-state defendant initiated the dealing. If it were the defendant who reached out to the forum state to create a business relationship, the defendant has transacted business within the forum state. The question of who initiates the contact, however, is but one factor to be considered and the determination is not always dependent upon who initiates the contact. With regard to reaching out, as a general rule, the use of interstate lines of communication such as mail and telephones does not automatically subject a defendant to the jurisdiction of the courts in the forum state.

(5:14cv321)

 The second factor is whether the parties conducted their negotiations or discussions in the forum state, or with terms affecting the forum state. If the parties negotiated in Ohio with provisions affecting Ohio, the non-resident transacted business in Ohio. However, merely directing communications to an Ohio resident for the purpose of negotiating an agreement, without more, is insufficient to constitute transacting business. Rather, there must additionally be some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state.

*Hitachi*, 2011 WL 711568 at *4 (citations, internal quotation marks omitted).

Here, Ohio Edison cannot show that Frontier Communications transacts business in Ohio. First, Frontier Communications has submitted an affidavit from Vice President David G. Schwartz that contains assertions that Ohio Edison has not contested.  Crucially, Schwartz avers that Frontier Communications has no license to transact business in Ohio.  ECF No. 17-1 ¶ 3. Schwartz further avers that Frontier Communications is not a party to the Joint Use Agreement between Ohio Edison and Frontier North.  ECF No. 17-1 ¶ 7.  In its Complaint, Ohio Edison acknowledges that Frontier North, not Frontier Communications, is a party to the Joint Use Agreement with Ohio Edison.  ECF No. 1-1 ¶ 8.  Ohio Edison also acknowledges that Frontier North, not Frontier Communications, is the "local exchange carrier providing telephone service in Ohio."  ECF No. 1-1 ¶ 3.  Ohio Edison has pleaded that "Frontier Communications served approximately 258,730 customers, or 9.0% of the total residential customers in the [sic] Ohio." ECF No. 1-1 ¶ 4.  Moreover, Ohio Edison presents a Frontier Communications press release from 2010 which states, in pertinent part, that "Ohio is one of Frontier's largest operations, spanning 77 counties and with more than 1,000 employees."  ECF No. 29-3 at 33.  At the same time, however, Ohio Edison has stated Frontier Communications "is the parent company of Defendant Frontier North and is responsible for its operation," and that Frontier

(5:14cv321)

Communications' involvement as to the Joint Use Agreement is "overseeing" the agreement between Ohio Edison and Frontier North through Centralized Joint Use Team.  ECF No. 1-1 ¶ 4. By contrast, Ohio Edison's Complaint discusses in far greater detail Frontier North's involvement in the breach of contract claim.  *E.g.*, ECF No. 1-1 ¶¶ 7 ("Ohio Edison and Frontier *North* each own utility poles . . . .") 11 ("The Joint Use Agreement enables Ohio Edison to attach electric facilities to poles owned by Frontier *North* . . . .") 18 ("During calendar year 2011, Ohio Edison was attached to, or reserved space on, 26,404 Frontier *North* poles.") 23 ("Ohio Edison invoiced Frontier *North* . . . .") (emphasis added).  There is nothing inconsistent between Ohio Edison's position that Frontier Communications provides service to 258,730 customers and Frontier Communications' position that *it* does not do business or provide services in Ohio other than through its subsidiary Frontier North.

Moreover, neither of the *Hitachi* factors warrant concluding that Frontier *Communications* transacted business in Ohio, even when construing the facts in the light most favorable to Ohio Edison.  The lone basis for finding that Frontier Communications initiated any business dealing is that another subsidiary of Frontier Communications—"an entity identified as Frontier Communications Inc."—sent Ohio Edison a payment on Frontier North's invoice.  *See* ECF No. 1-1 ¶ 26.  Ohio Edison does not allege that Frontier Communications Inc. is the same entity as Defendant Frontier Communications.  Furthermore, even if it were assumed that Frontier Communications sent the payment on the invoice, "as a general rule, the use of interstate lines of communication such as mail and telephones does not automatically subject a defendant to the jurisdiction of the courts in the forum state." *Hitachi*, 2011 WL 711568 at *4.  Likewise, the Court cannot conclude that alleging a single instance of paying a subsidiary's bill through the

(5:14cv321)

mail is sufficient to establish personal jurisdiction over the parent company.

As to the second factor, "whether the parties conducted their negotiations or discussions in the forum state, or with terms affecting the forum state," the Joint Use Agreement undoubtably involves terms affecting Ohio.  Ohio Edison has not shown any facts that establish that Frontier Communications is a party to the Joint Use Agreement, however.  Instead, Ohio Edison acknowledges that the subsidiary company Frontier North is the party to the Joint Use Agreement.  ECF No. 1-1 ¶ 8.  As previously discussed, Ohio Edison's Complaint makes it evident that Frontier North, not Frontier Communications, is the party with the "continuing obligation" that connects them to Ohio.  *Hitachi*, 2011 WL 711568 at *4.

In its Opposition Brief, Ohio Edison points to Frontier's website as evidence that Frontier Communications transacts business in Ohio.  The website states that Frontier Communications "offers voice, broadband, satellite video, wireless Internet data access, data security solutions, bundled offerings, specialized bundles for small businesses and home offices, and advanced business communications for medium and large businesses in 27 states"—including Ohio.  ECF No. 29-3 at 94.  The website also allows potential customers to order services from Frontier and has pages which allow existing customers to pay their bills.  ECF No. 29-5 ¶ 4.  Ohio Edison argues that its poles are the means by which Frontier Communications is capable of communicating with customers and providing its services to Ohio residents through its website. The Joint Use Agreement at issue in this case discusses, among other things, how much it costs to jointly use Ohio Edison's utility poles.  ECF No. 1-1 ¶ 7.  Therefore, Frontier Communications' activities in Ohio make use of the same Ohio Edison utility poles which formulate the basis for Ohio Edison's breach of contract claim.

(5:14cv321)

Even if the website is accepted as evidence that Frontier Communications transacts business in Ohio,[4] Ohio Edison cannot show that the breach of contract claim arose from the website. Ohio Edison correctly observes that a plaintiff has only a slight burden under the constitutional analysis for establishing that a claim arises from a defendant's contacts. *CompuServe*, 89 F.3d at 1467 ("If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts."). That burden is much higher under Ohio's long-arm statute. *Brunner*, 441 F.3d at 465–66 ("We thus conclude that the Ohio Supreme Court in *Goldstein* [*v. Christiansen* (1994), 70 Ohio St. 3d 232, 236] rejected *Creech*'s "but for" approach under the Due Process Clause and that the long-arm statute requires a "proximate cause" relationship between a plaintiff's personal injury claim and the defendant's conduct in Ohio."). In this case, it is undisputed that Frontier North is a party to the Joint Use Agreement, Frontier Communications is not. ECF No. 1-1 ¶ 7. Frontier North is obligated to pay for the use of the utility poles that it shares with Ohio Edison, Frontier Communications is not. Without more, the Court cannot conclude Frontier Communications' website is the proximate cause of Frontier North's alleged breach of contract.

In order to avoid this undisputed fact, Ohio Edison alleges that Frontier Communications directed Frontier North not to pay the disputed pole rents subject to Joint Use Agreement. ECF

---

[4] Ohio Edison argues that the website establishes that Frontier Communications has purposefully availed itself of Ohio, not that Frontier Communications transacts business in Ohio. ECF No. 29 at 14–15. In order to reach the question of whether asserting jurisdiction over a non-resident defendant comports with due process, the Court must first conclude that state law allows the exercise of jurisdiction. *Theunissen*, 935 F.2d at 1459. In Ohio, that requires first concluding that Ohio's long-arm statute provides a basis for exercising jurisdiction. *Conn*, 667 F.3d at 713. But, because the "transacting any business" standard is "coextensive" with the purposeful availment prong of the due process analysis, *see Burnshire Dev., LLC*, 198 F. App'x. at 432, the Court will consider Ohio Edison's arguments here.

(5:14cv321)

No. 29 at 15 (alleging that Frontier Communications "direct[ed] that the pole rent not be paid in full"). Ohio Edison, however, cannot connect Frontier Communications' alleged direction to the website—the basis for exercising personal jurisdiction under the long-arm statute—because the pole rent decision can be made without any connection to the forum state. As Ohio Edison recognizes in the Complaint, Frontier Communications is a Delaware corporation with its principal place of business in Connecticut. ECF No. 1-1 ¶ 4. Ohio Edison further alleges that an entity that shares the same address as Frontier Communications made an alleged short payment to Ohio Edison. ECF No. 1-1 ¶ 26. If, as Ohio Edison suggests, Frontier Communications made the decision not to pay the pole rent owned under the Joint Use Agreement, then Ohio Edison's breach of contract claim arises out of Frontier Communications' transacting business in Connecticut, not Ohio. *See Kreller Consulting Group, Inc. v. PrimeLending, 2014 WL 3689148, at *5 (S.D. Ohio July 23, 2014)* ("Plaintiff does not allege facts to support a finding that the cause of action "arises from" Defendant's contacts with Ohio. The alleged breach of contract occurred in Texas where Defendant refused to pay."); *see also Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 152 (6th Cir. 1997)* (concluding that plaintiff failed to show cause of action "ar[o]se from defendant's activities" in forum state when refusal to pay for goods was made outside of the forum state). This cannot satisfy the proximate causation required to establish that Ohio Edison's claim arises from Frontier Communications transacting business in Ohio.

The Court concludes that Ohio Edison has failed to demonstrate that Ohio's long-arm statute confers jurisdiction over Frontier Communications. Ohio Edison has failed to show that Frontier Communications transacts business in Ohio. As an alternative basis for its conclusion, the Court also notes that Ohio Edison has failed to demonstrate that the instant breach of contract

(5:14cv321)

claim arises from any contacts with Ohio that Frontier Communications may have.

### 3.  Alter Ego Doctrine

Ohio Edison also argues that the Court can exert general jurisdiction over Frontier Communications by treating Frontier North as the alter ego for Frontier Communications.  For the reasons described below, the Court concludes that Ohio Edison has failed to satisfy the standard for applying the alter ego doctrine to establish personal jurisdiction over Frontier Communications.

The Sixth Circuit recognizes that:

> it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.

*Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008).  Courts apply the alter ego theory of personal jurisdiction to a parent-subsidiary relationship when "the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction."  *Id.*  Because this case is an action based on diversity subject matter jurisdiction, the Court must apply Ohio's alter ego doctrine.  Although Ohio law sets forth a test for piercing the corporate veil, "the legal conception [of alter-ego liability] has historical antecedents in both federal and state law. Such cases may provide sound analogies or insightful analyses relating to the formal test set forth in [Ohio law] without usurping its authority."  *Music Express Broad. Corp. v. Aloha Sports, Inc.*, 2005-Ohio-3401, 161 Ohio App. 3d 737, 742, 831 N.E.2d 1087, 1091.  The Court may therefore rely on Sixth Circuit case law applying the alter ego theory of personal jurisdiction

(5:14cv321)

as long as the cases are consistent with Ohio law.

Under Ohio law, a court may disregard the corporate form when the plaintiff shows the

following:

> (1) control over the corporation by those to be held liable was so complete that the
> corporation has no separate mind, will, or existence of its own, (2) control over
> the corporation by those to be held liable was exercised in such a manner as to
> commit fraud or an illegal act against the person seeking to disregard the
> corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such
> control and wrong.

*Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 1993-Ohio-119, 67 Ohio St. 3d

274, 288, 617 N.E.2d 1075, 1086.  With respect to the first prong of the veil-piercing analysis,

courts consider a number of factors to determine whether the parent and subsidiary are

"fundamentally indistinguishable."  *Id.*  "In determining whether a subsidiary is an alter ego of

the parent corporation, Ohio courts consider factors such as whether (1) corporate formalities are

observed, (2) corporate records are kept, and (3) the corporation is financially independent."

*Estate of Thomson*, 545 F.3d at 362.  The Sixth Circuit also considers the following factors: (1)

sharing the same employees and corporate officers; (2) engaging in the same business enterprise;

(3) having the same address and phone lines; (4) using the same assets; (5) completing the same

jobs; (6) not maintaining separate books, tax returns, and financial statements; and (7) exerting

control over the daily affairs of another corporation.  *Id.*  While the plaintiff merely needs to

make a *prima facie* case at this stage of litigation, the plaintiff must provide "sufficient facts to

overcome the general presumption that one company operates independently from another."

*Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, 2006 WL 2225821, at *7 (N.D. Ohio

Aug. 2, 2006) (citing *Belvedere*, 617 N.E.2d at 1085).

(5:14cv321)

In this case, Ohio Edison has presented the following facts to support its position that Frontier North is the alter ego of Frontier Communications.  There is some evidence before the Court that Frontier Communications and Frontier North share some common officers and employees.  Mary Wilderotter, Daniel McCarthy, John Jureller, and Andrew Cain hold leadership positions in both Frontier Communications and Frontier North.  ECF No. 29-3 ¶¶ 9–11.  Moreover, Ohio Edison has alleged that the Central Joint Use Team is a Frontier Communications controlled group responsible for, among other things, overseeing Frontier North's Joint Use Agreement with Ohio Edison.  ECF No. 1-1 ¶ 4.  Frontier Communications and Frontier North also share a common mailing address.  ECF No. 29-3 ¶¶ 9–11.  Ohio Edison has also alleged that Frontier Communications and Frontier North share some common assets: all correspondence associated with the Frontier North Joint Use Agreement bore the service mark owned by Frontier Communications.  ECF No. 29 ¶ 25.  Ohio Edison also indicates that Frontier North filed a report with the Ohio Public Utilities Commission that shows Frontier Communications and Frontier North share the same website address.  ECF No. 29 ¶ 17.

The Court holds, however, that this evidence is insufficient to establish the *prima facie* case that Frontier Communications and Frontier North are fundamentally indistinguishable.  *Belvedere*, 617 N.E.2d at 1085.  As important as what Ohio Edison has alleged is what Ohio Edison has not alleged.  Ohio Edison has not alleged that Frontier Communications has disregarded corporate formalities with regard to Frontier North.  There is no evidence that Frontier North is financially dependent upon Frontier Communications, or that the two companies commingled funds.  *See Microsys*, 2006 WL 2225821 at *6 ("Sixth Circuit cases and Ohio law require demonstration of financial dependency between corporations and demonstration

(5:14cv321)

of nonobservance of corporate formalities. Microsys fails to demonstrate the state of financing between DDS and KAN, describe any commingling of funds between DDS and KAN, or detail KAN's nonobservance of corporate formalities.") (internal citations omitted). There is also no evidence that Frontier Communications and Frontier North failed to maintain separate books, tax returns, and financial statements. If anything, the record reveals that Frontier Communications diligently records earnings of gross income deriving from its various subsidiaries. *See* ECF No. 29-3 at 45 (Statement of Intrastate-Gross Earnings for Frontier North); 50 (Statement of Intrastate-Gross Earnings for Frontier Communications of Michigan). Ohio Edison has also failed to identify any other assets common to both Frontier Communications and Frontier North aside from the Frontier Communications service mark. Finally, while Ohio Edison alleges that Frontier Communications operates the Centralized Joint Use Team that oversees the Frontier North Joint Use Agreement, Ohio Edison has not presented other evidence of "exerting control over the daily affairs of another corporation." *Estate of Thomson*, 545 F.3d at 362. At most, the evidence concerning the Centralized Joint Use Team proves that Frontier Communications exerts some control over a single matter for its subsidiary. On the balance of these factors, the Court concludes that Ohio Edison has failed to meet its burden of establishing alter ego liability.

A survey of alter ego case law confirms that Ohio Edison has failed to establish that Frontier North is merely the alter ego of Frontier Communications. For instance, in *Glover v. Small Bone Innovations, Inc.*, 2012 WL 2412068 (N.D. Ohio June 26, 2012), another unit of the Court concluded that alter ego liability existed because "the majority of the factors weigh in favor of this defendant being considered an alter ego." Specifically, the *Glover* Court found alter ego personal jurisdiction when the plaintiff alleged that the actions of the subsidiary "ha[d] been

(5:14cv321)

controlled exclusively by the corporate officers" of the parent; the parent company's Executive

Officer for Sales and Marketing also served as the subsidiary company's lone corporate officer;

the parent company wrote checks from the subsidiary company's bank account; the parent and

subsidiary companies shared the same website; the parent and subsidiary companies' assets

overlapped; and the subsidiary company merely served as a "representation office" of the parent

company.  *Id.* at *5–6.  Conversely, other units of the Court declined to pierce the corporate veil

for personal jurisdiction even when the parent and subsidiary shared a common manager, the

same business enterprise, same phone line, and same address without additional evidence that

other corporate formalities had been disregarded.  *Microsys*, 2006 WL 2225821 at *6–7.

Likewise, the Court in *Garlock v. Ohio Bell Telephone Co.*, 2014 WL 2006781 (N.D. Ohio May

15, 2014) declined to exercise alter ego jurisdiction over the parent company when the plaintiff

alleged that the parent company "holds itself out to the public via advertising, as a provider of

telecom services and does not distinguish services which it offers through its subsidiaries," and

shared common management, officers, directors, board members, offices, corporate logo, and

website with its subsidiary.  *Id.* at *1.

The Court finds the instant case more akin to *Garlock* and *Microsys*.  Unlike in *Glover*,

Ohio Edison has failed to allege a majority of the factors that allow a court to pierce the corporate

veil for purposes of personal jurisdiction.  Like in *Microsys*, Ohio Edison has shown some

overlap among managers and employees of Frontier Communications and Frontier North without

adducing additional evidence that the parent and subsidiary were ignoring other corporate

formalities.  *See Matthews v. Kerzner Int'l Ltd.*, 2011 WL 5122641 (N.D. Ohio Oct. 27, 2011)

("'[I]t is entirely appropriate for directors [and officers] of a parent corporation to serve as

(5:14cv321)

directors [and officers] of its subsidiary, and that fact alone may not serve to expose the parent

corporation to liability for its subsidiary's acts.'") (quoting *United States v. Bestfoods*, 524 U.S.

51, 69 (1998)).  The Court also finds, like the *Garlock*, that the fact that Frontier

Communications "does not distinguish services which it offers through" Frontier North is

insufficient to establish alter ego liability, even when Frontier Communications and Frontier

North have some corporate officers and employees in common and share a website and corporate

logo.

Even if the Court concluded that the balance of factors weighed in favor of finding that

Frontier Communications and Frontier North, however, Ohio Edison's argument fails for a

second reason.  Ohio Edison has not presented any evidence allowing the Court to conclude that

Frontier Communications used Frontier North "to commit fraud or an illegal act" against Ohio

Edison.  *Belvedere*, 617 N.E.2d at 1086.  Ohio Edison's breach of contract allegation is

insufficient as a matter of Ohio law to satisfy the second prong for piercing the corporate veil.

The Ohio Supreme Court modified the second prong of *Belvedere* in *Dombroski v.*

*WellPoint, Inc.*, 2008-Ohio-4827, 119 Ohio St. 3d 506, 513-14, 895 N.E.2d 538, 545.  In

*Dombroski*, the Ohio Supreme Court confronted question of whether a court could pierce the

corporate veil when a party alleged unjust or inequitable acts that do not rise to the level of fraud

or illegal act.  The *Dombroski* Court rejected the expanded application of *Belvedere* to acts that

were merely unjust or inequitable because it found this approach inconsistent with the plain

language of *Belvedere*.  *Id.* at 511.  The Ohio Supreme Court also found the more expansive

approach "significantly increase[d] the number of cases in which a plaintiff could pierce the

corporate veil.  *Id.*; *see also id.* at 512 (continuing to adhere to the principle that "piercing the

(5:14cv321)

corporate veil is the rare exception that should only be applied in the case of fraud or certain other exceptional circumstances").  Accordingly, the *Dombroski* Court modified the second prong of the *Belvedere* analysis to require that the plaintiff "demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Id.* at 513.  At the same time, the *Dombroski* Court cautioned that "[c]ourts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct." *Id.*  The *Dombroski* Court concluded that insurer bad faith—a straightforward tort—is unjust conduct that "does not represent the type of exceptional wrong that piercing is designed to remedy." *Id.* at 513–14.

In this case, Ohio Edison's sole allegation against Frontier Communications is that it is responsible for Frontier North's breach of the Joint Use Agreement.  ECF Nos. 1-1 ¶ 35; 29 at 2. This is not a fraudulent, illegal, or similarly unlawful act required by *Dombroski*.  Courts prior to *Dombroski* did not consider a breach of contract action, without more, sufficient to justify piercing the corporate veil. *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 608 (6th Cir. 2005) ("Breach of contract might give rise to a civil suit, but it is not illegal."); *see also Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 674 (6th Cir. 1999); *Nursing Home Group Rehab. Servs., Inc. v. Suncrest Health Care, Inc.*, 2005-Ohio-3945, 162 Ohio App.3d 577, 834 N.E.2d 382, 386–88; *Connolly v. Malkamaki*, 2002-Ohio-6933, ¶ 34.  The modified standard in *Dombroski* has not changed this conclusion. *See Transition Healthcare Associates, Inc. v. Tri-State Health Investors, LLC*, 306 F. App'x 273, 282 and n.14 (6th Cir. 2009) ("Mere breach of contract is insufficient to satisfy prong two, and that is the most that Transition has presented."); *Advantage*

(5:14cv321)

*Bank v. Waldo Pub, LLC*, 2009-Ohio-2816, ¶ 42.  The Court likewise concludes that a simple

breach of contract by Frontier North—a party whom Ohio Edison is capable of (and is actively)

suing—is insufficient grounds to justify piercing the corporate veil to allow suit against Frontier

Communications.

For the reasons discussed above, the Court concludes that Ohio Edison has failed to

establish that the Court may exercise personal jurisdiction over Frontier Communications.  Ohio

Edison has not showed that Ohio's long-arm statute confers jurisdiction over Frontier

Communications.  Ohio Edison has also failed to demonstrate that the Court may pierce the

corporate veil in order to confer jurisdiction over Frontier Communications based on the contacts

of Frontier North.  Accordingly, the Court grants Frontier Communications' motion to dismiss.

### B.  Frontier North's Motion to Dismiss

Frontier North argues that Ohio Edison's lawsuit should be dismissed because Ohio

Edison has failed to adhere to the mandatory dispute resolution procedures contained in the Joint

Use Agreement.  ECF No. 18 at 3.  Specifically, Frontier North maintains that Ohio Edison had

an obligation under the Joint Use Agreement to initiate the process if it disputed the amount

Frontier North paid on the October 19, 2012 invoice.  ECF No. 36 at 2.  Ohio Edison counters

that the Joint Use Agreement requires Frontier North, not Ohio Edison, to initiate the dispute

process if Frontier North had believed that it owed Ohio Edison less than the amount included on

the invoice.  ECF No. 28 at 3.  According to Ohio Edison, Frontier North's failure to do so

placed Frontier North in material default of the Joint Use Agreement, which relieved Ohio

Edison of its obligation to adhere to the mandatory dispute resolution process.  ECF No. 28 at 3.

The Court agrees with Ohio Edison.  For the reasons discussed below, Frontier North's motion to

(5:14cv321)

dismiss is denied.

Article 17 of the Joint Use Agreement sets forth the process by which a party may dispute

an invoice.  It provides:

> **17.1 Notice**. Within sixty (60) days of receipt of an invoice, a Party may send
> notice to the invoicing Party under Article 28 (Notice) that it disputes a portion or
> all of an invoice. A Party may request from the invoicing Party an extension of
> this sixty (60) day period, approval of which will not be unreasonably withheld.
> The notice will contain: (1) a general description of each item or amount in
> dispute, (2) to the extent available, documents supporting each claim, and (3)
> payment of any non-disputed amounts. While an invoice is in dispute, the
> disputing Party may continue to place Attachments on the other Party's poles.
>
> **17.2 Payment**. If a Party does not pay or dispute an invoice within the sixty (60)
> day period, or any approved extension thereof, the invoicing Party will send notice
> of such failure to the other Party in accordance with Article 28 (Notice). The
> invoicing Party's failure to pay the invoice within sixty (60) days of receipt of
> such notice may be deemed a material Default under Article 20 [sic] (Defaults).

ECF No. 27 at 24.  The Joint Use Agreement places the burden on the recipient of the invoice to

initiate the dispute process through specific means, or else risk being deemed in default of the

Joint Use Agreement.

Frontier North has failed to abide by the terms of Article 17.  Contrary to Frontier North's

position, Ohio Edison had no obligation to initiate the dispute process over the October 19, 2012

because Ohio Edison was the invoicing party.  Paragraph 17.1 plainly indicates that Frontier

North had 60 days within which to send notice to Ohio Edison that Frontier North disputed a

portion of the invoice.  ECF No. 27 at 24.  Moreover, ¶ 17.1 delineates specific steps by which

Frontier North could dispute the invoice; namely, by providing the invoicing party with a

description of the disputed amount, support for its position, and payment of any non-disputed

amount.  ECF No. 27 at 24.  Frontier North argues that it acted in compliance with ¶ 17.1 when it

(5:14cv321)

paid the invoice on March 20, 2013.  There is no evidence in the limited record before the Court,

however, that suggests that Frontier North explained its position to Ohio Edison.  More

importantly, Ohio Edison received partial payment on the invoice 152 days after Ohio Edison had

sent the invoice to Frontier North—well beyond the 60 day window in which to either pay the

invoice, dispute the invoice, or request an extension of time.  ECF No. 1-1 ¶ 26.  Again, no

evidence suggests that Frontier North took any of these steps prior to making the partial payment

on March 20, 2013.  Because Frontier North failed to abide by Article 17's procedures for

disputing the October 19, 2012 invoice, Ohio Edison was entitled to treat Frontier North's partial

payment of the invoice as a material default pursuant to ¶ 17.2.

Article 21 of the Joint Use Agreement governs defaults.  Paragraph 21.1 lists various

events which constitute default under the Joint Use Agreement.  One such event is when "a party

fails to pay any non-disputed amount due under Article 14 [sic] (Invoice Dispute) within sixty

(60) days after receipt of the invoicing Party's notice of the failure pursuant to Article 28

(Notice)."  ECF No. 27 at 31.  Article 21 proceeds to describe the remedies that a non-defaulting

party may pursue against the party in default:

> **21.2 Default Remedies**. If a Party is in Default under this Agreement and fails
> either to correct such Default or initiate the dispute resolution procedures under
> Article 29 (Resolving a Dispute) within the sixty (60) day cure period specified
> below, the other Party may, *in addition to all remedies available by contract, law,
> and equity*, with sixty (60) days prior notice to the defaulting Party under Article
> 28 (Notice) . . . .

ECF No. 27 at 31 (emphasis added).  Finally, ¶ 21.3 provides a 60 day cure period in which "the

Party in Default will be entitled to take all steps necessary to cure any defaults."  ECF No. 27 at

32.  The Complaint presents sufficient facts to show that Ohio Edison complied with Article 21.

(5:14cv321)

As discussed above, Ohio Edison received partial payment for the October 19, 2012 invoice on March 20, 2013—a full 152 days after Ohio Edison had sent the invoice to Frontier North.  ECF No. 1-1 ¶ 26.  Ohio Edison pleaded that it had sent notices to Frontier Communications that Frontier North was in default of the Joint Use Agreement on June 5, 2013 and October 10, 2013, satisfying the 60-day notice requirement of ¶ 21.1.1.  There is no evidence suggesting that Frontier North availed itself of the cure period described in ¶ 21.3.  Consequently, the Joint Use Agreement entitled Ohio Edison to pursue "all remedies available by contract, law, and equity" pursuant to ¶ 21.2.

Frontier North argues that it could not be considered in default because ¶ 21.1.1 only treats the failure to pay non-disputed amounts as grounds for default.  The partial payment reflects, according to Frontier North, the non-disputed amount that it owed to Ohio Edison under Ohio law.  ECF No. 36 at 5.  Because Frontier North paid in good faith what it believed it owed on the invoice, it did not default on the invoice and Ohio Edison should be required to go through the mandatory dispute resolution process.  The Court finds two problems with this argument.

First, Frontier North ignores plain language contained in Article 17 of the Joint Use Agreement that reflects that a disputing party needs to indicate to the invoicing party that it believes the invoice is incorrect.  As discussed above, Article 17 requires the disputing party to provide the invoicing party within 60 days with notice that indicates the amount in dispute as well as payment of the non-disputed amount.  ECF No. 27 at 24.  This allows the invoicing party to see that all amounts are accounted for: the paid non-disputed amount plus the disputed amount indicated by the notice should add up to the amount initially invoiced.  There is no indication that Frontier North provided Ohio Edison with an explanation for why only a partial payment had

(5:14cv321)

been made.  Frontier North may have intended that the March 20, 2013 payment reflect the non-disputed portion of the invoice, but Ohio Edison had no way to know that Frontier North intended the payment to cover what it believed to be the non-disputed amount.  More importantly, the partial payment without the description of the amount in dispute would not have alerted Ohio Edison that Frontier North had availed itself of Article 17.

Second, the Joint Use Agreement contemplates the precise scenario that gave rise to Frontier North's actions.  Paragraph 15.12 provides that, "if a Party believes the application of the rate formula adopted in this Agreement produces unfair, unjust, or unreasonable rates," that party may seek "review of the rates or rate formula by a regulatory authority."  ECF No. 27 at 24.  Ohio law empowers the Public Utilities Commission of Ohio (PUCO) to "prescribe reasonable conditions and compensation for such joint use" when parties cannot agree to fair compensation on their own.  *See* R.C. § 4905.51.  Frontier North's position is that its payment "reflected the invoiced contract rate for the pre-July 12, 2011 period and the rate Frontier North *estimated* as reasonable under Ohio law for the post-July 12, 2011 period."  ECF No. 36 at 2 (emphasis added).  There is no evidence that Frontier North has petitioned PUCO to set reasonable rates, however.  If Frontier North believed that the Joint Use Agreement set "unreasonable rates," the plain language of ¶ 15.12 provides Frontier North with recourse.  Failure to take advantage of that opportunity does not provide Frontier North with a basis for ignoring past financial obligations without explaining itself pursuant to the procedures for disputing invoices in Article 17.

Ohio Edison has pleaded sufficient facts to show that it was not subject to the mandatory dispute resolution procedures of the Joint Use Agreement.  Accordingly, the Court denies

(5:14cv321)

Frontier North's motion to dismiss.

### IV.  Conclusion

For the foregoing reasons, the Court hereby grants Defendant Frontier Communications'

Motion to Dismiss, and denies Defendant Frontier North's Motion to Dismiss.  Accordingly, the

case will proceed solely on Ohio Edison's breach of contract claim against Frontier North.

Frontier Communications is dismissed from the case.


IT IS SO ORDERED.


  November 14, 2014                          /s/ Benita Y. Pearson
Date                                      Benita Y. Pearson
                                          United States District Judge